**UNITED STATES OF AMERICA**
**MERIT SYSTEMS PROTECTION BOARD**

| | |
|---|---|
| BENJAMIN BEERMAN,<br>　　　　　Appellant, | DOCKET NUMBER<br>AT-0752-17-0720-I-1 |
| 　　　v. | |
| DEPARTMENT OF<br>　TRANSPORTATION,<br>　　　　　Agency. | DATE:  December 22, 2023 |

# THIS ORDER IS NONPRECEDENTIAL[1]

Adam Jerome Conti, Esquire, Atlanta, Georgia, for the appellant.

Ailya Zaidi, Atlanta, Georgia, for the agency.

Jack Foster Gilbert, Lakewood, Colorado, for the agency.

**BEFORE**

Cathy A. Harris, Vice Chairman
Raymond A. Limon, Member

**REMAND ORDER**

The appellant has filed a petition for review of the initial decision, which affirmed his removal for failure to follow instructions.  For the reasons discussed below, we GRANT the appellant's petition for review, VACATE the administrative judge's findings regarding the appellant's whistleblower reprisal

---

[1] A nonprecedential order is one that the Board has determined does not add significantly to the body of MSPB case law.  Parties may cite nonprecedential orders, but such orders have no precedential value; the Board and administrative judges are not required to follow or distinguish them in any future decisions.  In contrast, a precedential decision issued as an Opinion and Order has been identified by the Board as significantly contributing to the Board's case law.  *See* 5 C.F.R. § 1201.117(c).

affirmative defense, nexus, and penalty, and REMAND the case to the regional office for further adjudication in accordance with this Remand Order.

## BACKGROUND

Prior to the removal at issue in this appeal, the agency employed the appellant as a Senior Structural Engineer, GS-14, with the Federal Highway Administration (FHWA), Office of Technical Services, Resource Center. Initial Appeal File (IAF), Tab 5 at 22, Tab 7 at 6, Tab 16 at 4. On Thursday, March 30, 2017, a bridge portion of Interstate 85 (I-85) in Atlanta, Georgia, collapsed as a result of a fire. IAF, Tab 7 at 6. Senior FHWA officials, including the Acting Administrator and Georgia Division Administrator, represented FHWA in offering support to the Georgia Department of Transportation (GDOT). *Id.* Early in the morning on Friday, March 31, 2017, the appellant offered to assist the senior officials, and his supervisor emailed him to "please standby" and instructed him to "let me and [the Director of the Office of Bridges and Structures (Director)] know if your [sic] contacted by anyone for possible help on this matter." IAF, Tab 8 at 25-26. The appellant responded, "will do." *Id.* at 25. Later that day, without further communication with his supervisor, the appellant went to the site of the bridge collapse. IAF, Tab 19, Hearing Compact Disc (testimony of the appellant). Afterwards, he emailed photos of the site to the GDOT state bridge engineer, the Director, his supervisor, and others. *Id.*; IAF, Tab 8 at 32-33.

On the morning of Saturday, April 1, 2017, the appellant emailed the GDOT state bridge engineer regarding his suggestion to repair the bridge using the "in-fill" methodology and his estimate regarding the timeframe for completing the repairs. IAF, Tab 8 at 46-49. He copied the FHWA Georgia Division Administrator and a Georgia Division Structural Engineer (L.K.), but he did not copy his supervisor. *Id.* at 46. Less than 2 hours later, his supervisor emailed him stating the following:

> Did someone ask you to go to the bridge site?  If so, why didn't you tell me and [the Director] per my instructions provided earlier?
>
> I am not sure what your involvement with this effort has been so far. Please call me to discuss this on Monday.  In the meantime, I don't want you to have any involvement with this effort without my approval.

*Id.* at 36.  The appellant responded that L.K. had asked him to go to the site and that he had been providing technical assistance.  *Id.* at 38.

On Sunday, April 2, 2017, the GDOT state bridge engineer forwarded the appellant's email regarding the in-fill method to the GDOT chief engineer, who responded to the appellant's email thanking him for his suggestions and informing him that GDOT had determined that the best approach was to begin construction of permanent replacement bridges.  IAF, Tab 8 at 46.  The appellant emailed her to thank her for her consideration.  *Id.* at 45.  Shortly thereafter, he sent her another email with a hand-written note attached apparently showing his estimate for completing the bridge repair using the in-fill method.  *Id.* at 44-45; IAF, Tab 6 at 49.  In the email, he stated the following:

> I don't mean to lean on you, but I'll leave you w/ this "from the hip" estimate.  Of course there are other considerations to think of.
>
> I'll stay out of your way.  If you need anything more, you have my contact information.

IAF, Tab 8 at 44.  The FHWA Georgia Division Administrator then emailed the GDOT chief engineer to inform her that FHWA was in "full agreement with GDOT's approach to reopening I-85."  *Id.* at 50.  That evening, the Georgia Division Administrator called and emailed the appellant's supervisor regarding the appellant's interference with their efforts to restore I-85 and asking him to "direct [the appellant] to cease all communication with GDOT and members of [his] staff."  *Id.* at 8, 41.  The appellant's supervisor then emailed the appellant instructing him to "cease and desist your involvement with the i85 [sic] effort. The Division don't [sic] want your involvement with this project."  *Id.* at 42.

On May 30, 2017, the appellant's supervisor proposed to remove him on the basis of one charge of failure to follow instructions. IAF, Tab 7 at 6-12. The agency set forth the following three specifications in support of the charge:

> Specification 1: On March 31, 2017, you went to the I-85 bridge site and involved yourself in the bridge event. Your conduct was in direct opposition to the March 31 email instruction in that you did not remain on standby and did not let me know that you were contacted for help by [L.K.], Structural Engineer, Georgia Division. [L.K.] is not in your supervisory succession and was not able to override my instruction to you.

> Specification 2: On April 1, you continued to involve yourself in the bridge event without telling me first, as instructed, that you had been contacted for help, or getting my approval before becoming involved. Your conduct was in direct opposition to the March 31 and April 1 email instructions.

> Specification 3: On April 2, you continued to involve yourself in the bridge situation using email communication. This involvement was in direct opposition to the March 31 and April 1 email instructions. After being alerted to your continued involvement, I was prompted to issue a third instruction for you to cease and desist.

*Id.* at 7. The appellant provided an oral and written response to the proposed removal. IAF, Tab 5 at 33-87, Tab 6 at 4-259. In an August 7, 2017 decision, the deciding official found that each specification was supported by preponderant evidence and that removal was an appropriate penalty. IAF, Tab 5 at 23-32. Thus, she removed the appellant, effective immediately. *Id.* at 23.

The appellant appealed his removal to the Board arguing that the charge was not substantiated because L.K. asked him to go to the bridge collapse site, "his response was an essential function of his official duties," he made a good faith effort to keep his supervisor apprised of his involvement, and no one asked him to leave the bridge collapse site. IAF, Tab 1 at 6. He also argued that his removal did not promote the efficiency of the service and that the penalty of removal was unreasonable. *Id.* He further argued that his "professional advice and counsel regarding the response to the catastrophe" constituted a whistleblowing disclosure because he reported a gross waste of funds and a

substantial and specific danger to public health and safety and that the agency removed him in reprisal for this disclosure. *Id.*

In an order and summary of the prehearing conference, the administrative judge indicated that he struck the appellant's affirmative defense of whistleblower reprisal because his alleged disclosure—namely, his suggestion to GDOT and agency officials that the in-fill method would be faster and more economical than their approach—was a policy recommendation rather than a protected disclosure. IAF, Tab 17 at 3-4. He further found that any funds or mismanagement would be on the part of the Georgia state government, rather than the Federal Government. *Id.* at 4. The appellant objected to this ruling during the prehearing conference and subsequently submitted a written objection. *Id.*; IAF, Tab 18 at 4-6.

After holding the appellant's requested hearing, the administrative judge issued an initial decision affirming the removal action. IAF, Tab 21, Initial Decision (ID). The appellant has filed a petition for review of the initial decision, the agency has responded, and the appellant has replied. Petition for Review (PFR) File, Tabs 1, 3-4.

## ANALYSIS

The administrative judge properly sustained the charge.

As noted above, the agency charged the appellant with failure to follow instructions supported by three specifications concerning his conduct in the aftermath of the I-85 bridge collapse. IAF, Tab 7 at 6-12. To prove a charge of failure to follow instructions, an agency must establish that the employee was given proper instructions and that he failed to follow the instructions, without regard to whether the failure was intentional or unintentional. *Powell v. U.S. Postal Service*, 122 M.S.P.R. 60, ¶ 5 (2014). Here, the administrative judge found that the agency proved specification 1, which concerned the appellant's

conduct on March 31, 2017, and specification 3, which concerned his conduct on April 2, 2017, but did not prove specification 2.[2]  ID at 7-10.

Regarding specification 1, the administrative judge credited L.K.'s hearing testimony that he did not ask the appellant to go to the site of the bridge collapse on March 31, 2017.  ID at 5-6 (citing *Hillen v. Department of the Army*, 35 M.S.P.R. 453, 459-60 (1987)).  Thus, the administrative judge found that the appellant violated his supervisor's instruction to "standby" when he went to the bridge site that day on his own initiative.  ID at 6-7.  The administrative judge further found that, even if L.K. did ask the appellant to come to the bridge site, the appellant still disobeyed his supervisor's instruction because he failed to inform him that anyone contacted him for assistance.  ID at 7.  On review, the appellant argues that the administrative judge erred in crediting L.K.'s testimony that he did not ask him to go to the bridge site and, in any event, no one told him *not* to go to the bridge site, he had a legitimate basis for going, and, if the Georgia Division Administrator had truly been upset by his presence at the bridge site, he should have asked him to leave.[3]  PFR File, Tab 1 at 11-13.  These arguments are unavailing.  First, the appellant's mere disagreement with the administrative judge's credibility determination is insufficient to overturn it.  *See*

_____

[2] In declining to sustain specification 2, the administrative judge found that there was no evidence that the appellant engaged in actionable misconduct on April 1, 2017.  ID at 10.  Neither party challenges this finding on review, and we therefore do not disturb it.

[3] In support of his contention that L.K. asked him to go to the bridge site on the morning of March 31, 2017, the appellant submitted for the first time on review his cellular phone statement showing, in relevant part, that he received a call at 8:10 a.m. that morning.  PFR File, Tab 1 at 23-98.  The Board generally will not consider evidence submitted for the first time on review unless the appellant shows the following:  (1) the documents and the information contained in the documents were unavailable before the record closed despite due diligence; and (2) the evidence is of sufficient weight to warrant an outcome different from that of the initial decision. *Cleaton v. Department of Justice*, 122 M.S.P.R. 296, ¶ 7 (2015), *aff'd*, 839 F.3d 1126 (Fed. Cir. 2016); 5 C.F.R. § 1201.115(d).  The appellant's March/April cellular phone statement is not a new document because it was available before the close of the record below and it is not material because the fact of the call is not disputed.  Thus, we do not consider it.

*Haebe v. Department of Justice*, 288 F.3d 1288, 1301 (Fed. Cir. 2002) (explaining that the Board must defer to an administrative judge's credibility determinations when they are based, explicitly or implicitly, on observing the demeanor of witnesses testifying at a hearing and may overturn such determinations only when it has "sufficiently sound" reasons for doing so). In addition, as the administrative judge correctly found, if L.K. did ask the appellant for help, he failed to follow his supervisor's instruction to let him know if anyone reached out to him for assistance. ID at 6-7. Finally, the appellant's belief that it was appropriate for him to go to the bridge site on March 31, 2017, does not establish that his supervisor's instruction was not proper or that he followed it. Accordingly, we find that the administrative judge properly sustained specification 1.

Regarding specification 3, the administrative judge found that the appellant failed to follow his supervisor's April 1, 2017 instruction to not have any further involvement with the bridge repair effort without prior approval when, on April 2, 2017, he emailed GDOT's chief engineer. ID at 7-10; IAF, Tab 6 at 49, Tab 8 at 36, 44-45. The appellant argues that his response did not constitute "further involvement" in the incident because he only transmitted a "previously compiled cost estimate . . . [which] was a follow-up to his prior assessment," he expressly stated therein that his participation had ended, and his email constituted a whistleblower disclosure. PFR File, Tab 1 at 10. These arguments, even if true, do not establish that the administrative judge erred in finding that the appellant failed to follow his supervisor's April 1, 2017 instruction not to have "any involvement with this effort without my approval" when, on April 2, 2017, he emailed the GDOT chief engineer with his estimate for completing the bridge repair and stated, "I don't mean to lean on you, but I'll leave you w/ this 'from the hip' estimate." IAF, Tab 6 at 49, Tab 8 at 39, 44-45. Thus, we find that the administrative judge properly sustained specification 3.

In light of the foregoing, we find that the administrative judge correctly found that the agency proved the charge. ID at 7-10; *see Burroughs v. Department of the Army*, 918 F.2d 170, 172 (Fed. Cir. 1990) (stating that, when more than one factual specification supports a single charge, proof of one or more, but not all, of the supporting specifications is sufficient to sustain the charge).

**We remand the appellant's affirmative defense of whistleblower reprisal for notice and further adjudication.**

Generally, in an adverse action appeal, an appellant's claim of whistleblower reprisal is treated as an affirmative defense. *Campbell v. Department of the Army*, 123 M.S.P.R. 674, ¶ 11 (2016). In such appeals, once the agency proves its adverse action case by a preponderance of the evidence, the appellant must show by preponderant evidence that he engaged in whistleblowing activity by making a protected disclosure under 5 U.S.C. § 2302(b)(8) and that the disclosure was a contributing factor in the agency's personnel action.[4] *Id*.; 5 C.F.R. § 1201.56(b)(2)(i)(C).

As noted above, the administrative judge struck the appellant's whistleblower reprisal affirmative defense at the prehearing conference on the ground that he failed to nonfrivolously allege that he made a protected disclosure within the meaning of the Whistleblower Protection Act. IAF, Tab 17 at 3-4. The appellant objected to this ruling during the prehearing conference and subsequently submitted a written objection arguing again that his recommendations to GDOT and FHWA personnel that the in-fill method would save time and money on bridge repair constituted a protected disclosure. *Id.* at 4; IAF, Tab 18 at 4-6. He also argued in his written objection that his managers perceived him to be a whistleblower because "they feared he would disclose to outside parties at the incident site the Agency's negligence in permitting the

---

[4] Preponderant evidence is defined as the degree of relevant evidence that a reasonable person, considering the record as a whole, would accept as sufficient to find that a contested fact is more likely to be true than untrue. 5 C.F.R. § 1201.4(q).

storage of combustible materials as well as the existence of a skateboard under an Interstate Highway." IAF, Tab 18 at 6.

In the initial decision, the administrative judge considered the appellant's objection to his decision to strike the whistleblower affirmative defense but found no merit to his contention that he made a protected disclosure. ID at 12-13. He acknowledged the "perceived whistleblower" theory raised in the appellant's written objection to the prehearing order and summary but declined to consider it because the appellant did not raise it in his prehearing submission or during the prehearing conference and failed to show good cause as to why the additional claim should be allowed. ID at 14 n.5. On review, the appellant argues that the administrative judge erred in striking his whistleblower reprisal affirmative defense prior to the hearing without providing him notice of his burden of proof to establish this affirmative defense and by refusing to consider his perceived whistleblower claim. PFR File, Tab 1 at 15-20. We agree.

The Board has consistently required administrative judges to apprise appellants of the applicable burdens of proving a particular affirmative defense, as well as the kind of evidence required to meet those burdens. *Erkins v. U.S. Postal Service*, 108 M.S.P.R. 367, ¶ 8 (2008). When an administrative judge fails to inform the parties of their burdens and methods of proof, the Board typically remands the appeal so the administrative judge can afford such notice and an opportunity to submit evidence and argument under the proper standard. *Id.* Here, the administrative judge failed to provide the appellant notice regarding his whistleblower reprisal affirmative defense. Accordingly, we vacate the administrative judge's findings regarding the appellant's whistleblower reprisal affirmative defense and remand this appeal for further adjudication.

On remand, the administrative judge shall inform the appellant of his burden of proof regarding his whistleblower reprisal affirmative defense, including his perceived whistleblower claim, and afford the parties an opportunity to submit evidence and argument on these issues. If desired by the parties, the

administrative judge shall hold a supplemental hearing.[5]  *See* 5 U.S.C. § 7701(a)(1).  The administrative judge then must issue a new initial decision that addresses the appellant's affirmative defense and its effect on the outcome of the appeal, if any.

An adverse action is sustainable only if the appellant cannot establish his affirmative defenses.  *Hall v. Department of Transportation*, 119 M.S.P.R. 180, ¶ 8 (2013), *overruled on other grounds by Thurman v. U.S. Postal Service*, 2022 MSPB 21.  Here, it would be premature for the Board to consider whether there is a nexus between the appellant's misconduct and the efficiency of the service and whether the agency-imposed penalty is reasonable given that additional adjudication of the appellant's affirmative defense is required.  *Id.* Thus, we vacate the administrative judge's findings regarding nexus and penalty.  However, if the appellant does not prevail on his affirmative defense on remand, the administrative judge may incorporate into the new initial decision his original findings with respect to the issues of nexus and the reasonableness of the penalty of removal.  *Id.*

---

[5]  Below, the administrative judge struck the appellant's whistleblower reprisal affirmative defense after the period for completing discovery had ended.  IAF, Tabs 2, 17.  It is within the administrative judge's discretion whether or not to allow the parties to conduct additional discovery on remand.

**ORDER**

For the reasons discussed above, we REMAND this case to the regional office for further adjudication in accordance with this Remand Order.

*Jennifer Everling*

FOR THE BOARD: _____

Jennifer Everling
Acting Clerk of the Board

Washington, D.C.